JUDGE KATHLEEN CARDONE

FILED

2026 SEP 17 PM 12:31

CLERK, U.S. DISTRICT COURT WESTERN DISTRICT OF TEXAS

BY ______ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **EMILY SUTTON,** | § | |
| **Plaintiff,** | § | |
| v. | § | **Case No.:** |
| **THOMPSON LAW LLP**, a Texas Limited Liability Partnership, **ALL ACCESS ADVOCATES LLC,** an Arizona Limited Liability Company, **QUINTESSA, LLC**, an Oklahoma Limited Liability Company | § | EP 26CV2377 |
| **Defendants.** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**INTRODUCTION**

Plaintiff, Emily Sutton, brings this Complaint against Thompson Law LLP, All Access Advocates LLC, and Quintessa LLC to stop their illegal practice of placing, through its telemarketers, unsolicited telephone texts or calls in violation of the Telephone Consumer Protection Act ("TCPA"), Texas Business and Commerce Code ("TBCC"), and Texas Government Code ("TGC").

**NATURE OF THE ACTION**

1. Defendant Thompson Law LLP is a law firm that offer legal services to private consumers. Defendant All Access Advocates LLC is a law and legal services firm. Defendants Thompson Law LLP and All Access Advocates LLC are referred to as "firms" in the retainer received and are in a type of business partnership. As a part of their marketing, Defendant

Thompson Law LLP and All Access Advocates LLC hires call centers like Defendant Quintessa LLC to place thousands of unsolicited phone calls to solicit new prospective clients and business.

2. Defendants Thompson Law LLP, All Access Advocates LLC, and Quintessa LLC did not prior obtain express written consent before sending a pre-recorded message to Plaintiff's phone number and, therefore, is in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3. Congress enacted the TCPA in 1991 in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

4. The TCPA instructed the Federal Communications Commission to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers] . . . in an efficient, effective, and economic manner and without the imposition of any additional charge to telephone subscribers." 47 U.S.C. § 227(c)(2).

5. The TCPA states to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes. TCPA 227(b)(1)(B).

6. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication damages in the amount provided by this section. TBCC § 305.053(a)(2).

7. A seller may not make a telephone solicitation from a location in this state or to purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made. TBCC § 302.101(a).

8. By placing prerecorded phone calls, Defendants Thompson Law LLP, All Access Advocates LLC, and Quintessa LLC violated the privacy and statutory rights of Plaintiff.

9. Plaintiff therefore seeks an injunction requiring Defendants Thompson Law LLP, All Access Advocates LLC, and Quintessa LLC to stop its illegal phone calls, as well as award actual and statutory fines with costs and reasonable attorneys' fees.

**PARTIES**

10. Plaintiff Emily Sutton (hereinafter "Plaintiff") is an individual residing in or near El Paso County, Texas and was present for all causes of action complained of herein within El Paso, Texas.

11. Defendant Thompson Law LLP ("Thompson Law") is a limited liability partnership organized and existing under the laws of Texas and can be served via physical address 3300 Oak Lawn Ave, Suite 300, Dallas, TX 75219-5187.

12. Defendant All Access Advocates LLC ("All Access Advocates") is a limited liability company organized and existing under the laws of Arizona and can be served via registered agent Corporation Service Company dba CSC-Lawyers Incorp at 211 E. 7th St., Suite 620, Austin, TX 78701.

13. Defendant Quintessa LLC ("Quintessa") is a limited liability company organized and existing under the laws of Oklahoma and can be served via registered agent Lauren McNeil at 1900 NW Expressway, Suite 1600, Oklahoma City, OK 73118.

14. Thompson Law, All Access Advocates, and Quintessa are collectively referred as "Defendants."

**JURISDICTION AND VENUE**

15. This action is brought by Plaintiff pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

16. This Court has jurisdiction over the subject matter of the claims under the TCPA pursuant to 47 U.S.C. § 227(g)(2). This Court further has jurisdiction over the subject matter of the claims under the TCPA pursuant to 27 U.S.C. § 1331 and has pendant jurisdiction over the subject matter of the claims under the Texas Business and Commerce Code pursuant to 28 U.S.C. § 1367.

17. This Court has general personal jurisdiction over Defendant Thompson Law because it is a Texas limited liability partnership with their office residing in Dallas, TX.

18. This Court has specific personal jurisdiction over the Defendants All Access Advocates and Quintessa authorized telemarketers to place or did place calls or texts on their behalf to Texas residents, derive or derived revenue from Texas residents, and sell goods and services to Texas residents, purposefully directed texts or calls to Texas area code phone numbers, and have otherwise availed themselves to the State of Texas.

19. Venue of this suit lies in the Western District of Texas, El Paso Division pursuant to 47 U.S.C. § 227(g)(4) because violations of the TCPA occurred within the Western District of Texas.

20. Venue further lies in the Western District of Texas, El Paso Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of events giving rise to the claim alleged herein occurred within the Western District of Texas.

## FACTUAL ALLEGATIONS

21. Plaintiff has no prior business relationship with Defendants.

22. Plaintiff never gave written or expressed consent to be contact by Defendants and/or their agents, or to any law firms prior to the phone call. All solicitation texts and call came to Plaintiff's -7893 number.

23. Defendant Thompson Law is a law firm that offers legal services for personal injury cases in Texas.

24. Defendant All Access Advocates is a law and business entity in Arizona. Defendant All Access Advocates is included in the retainer agreement and in a business partnership with Thompson Law LLP. All Access Advocates is also alternatively known as Thompson Law, etc. See below[1].

All Access Advocates LLC BRANCH

| | |
|---|---|
| **Company Number** | 0805647000 |
| **Status** | Forfeited Existence |
| **Incorporation Date** | Please log in to see this data |
| **Dissolution Date** | Please log in to see this data |
| **Company Type** | Foreign Limited Liability Company (LLC) |
| **Jurisdiction** | Texas (US) |
| **Branch** | Branch of Arizona (US) company |
| **Registered Address** | 8825 N. 23rd Ave, Ste 100<br>Phoenix<br>85021<br>AZ<br>USA |
| **Alternative Names** | All Access Advocates LLC (trading name, 2024-08-01 - 2026-02-27)<br>Thompson Law Injury Lawyers (trading name, 2024-08-07 - 2026-02-27)<br>Thompson Law (trading name, 2024-08-07 - 2026-02-27)<br>Thompson Firm (trading name, 2024-08-07 - 2026-02-27) |

25. Defendant Quintessa is a legal marketing and intake company that generates, screens, and delivers personal injury leads to law firms. Quintessa has numerous assumed names. The one used particularly in this case is "Car Accident Helpline." See Below[2].

---

[1] https://opencorporates.com/companies/us_tx/0805647000

[2] https://www.sos.ok.gov/corp/corpInformation.aspx?id=3512753459, Purchased documents reveal all assumed names

NAMES INFORMATION

| Name | Name Type | Name Status | Creation Date |
|---|---|---|---|
| QUINTESSA LLC | Legal | In use | July 14, 2024 |

PRINCIPALS

No entries found.

TRADENAMES

| Name | Name Status |
|---|---|
| CAR ACCIDENT HELPLINE | Active |
| HAVE YOU BEEN INJURED IN AN ACCIDENT | Active |
| INJURY CASE REVIEWS | Active |
| INJURY CLAIMS HELPLINE | Active |
| INJURY HELP NETWORK | Active |
| QUINTESSA MARKETING | Active |
| THE INJURY CLAIMS DEPARTMENT | Active |
| THE INTAKE DEPARTMENT | Active |

26. Plaintiff receives numerous phone calls soliciting car accident representation every day by unknown numbers and callers. Every time Plaintiff would answer and go through the phone call, they would hang up on her once she stated what her name was.

27. Plaintiff decided to use an alias, "Emily Bricks" for investigation purposes only.

28. Plaintiff received one (1) pre-recorded phone call to her phone number ending in -7893 soliciting legal services for personal injury.

29. On May 29, 2026, at 4:47 PM, Plaintiff got a phone call from 915-751-2497. See below.



30. Plaintiff was greeted by an artificial voice asking if she had been in an auto accident within the last 12 months. Plaintiff engaged in the phone call to identify the true identity of who was sending illegal phone calls to her -7893 number.

31. Plaintiff has reason to believe the voice was artificial because it sounded robotic in nature and paused for long periods of time before replying.

32. Plaintiff was connected to "Steve with Auto Claims Solutions" who began the intake process by gathering Plaintiff's information. Steve made an internal transfer to "Zach from Auto Claims Solutions."

33. Zach confirmed and repeated the information that Plaintiff gave to Steve. After confirming Plaintiff's information, Zach transferred Plaintiff. Plaintiff knows it was a transfer because the caller, Zach, stop responding and Plaintiff only heard a ringing sound.

34. Plaintiff connected to "Jeremy." Jeremy stated, "How are you doing today Emily? My name is Jeremy. I have received an online request to retrieve your police report. Would like some help with that?" Jeremy never properly identifies what company he's soliciting on behalf when he initially engaged in the call. After speaking to Jeremy for about seventeen (17) minutes, Jeremy mentioned the company and law firms identity by stating, "... my supervisor here at the Car Accident Helpline have matched you with the attorneys at Thompson Law..."

35. While on the phone, Plaintiff received texts containing links, like https:accidentintakeforms.com/contract.aspx?case=6eb685f6-3eff-41ad-98fa-7994014d581a (INSERT #1), which each link took Plaintiff to an agreement for Defendants Thompson Law and All Access Advocates (INSERT #2) from phone number 888-974-2224.

36. Plaintiff received a call later that day from an unknown phone number 888-980-1394, at 6:13 PM, stating they were calling from "Thompson Law" (INSERT #3). When Plaintiff google searched the number, the phone number belong to Defendant Thompson Law. See below[3].

*INSERT #1:*




*INSERT #2:*

**CLIENT FEE AGREEMENT (this "Agreement")**

The undersigned, Emily Bricks ("Client"), employs the Firms (defined below) as my attorneys to make claims and file suit, if deemed necessary and appropriate, to collect all damages and compensation, and obtain all appropriate relief to which Client may be entitled, as well as to, with consent, compromise and settle all claims held by Client arising out of or resulting from an incident that occurred on or about 12/05/2025 ("Incident").

1. **AUTHORITY AND REPRESENTATION.** Client fully authorizes and directs the Firms to jointly manage and handle my claims as they deem

9. **ATTORNEYS AND STAFF HANDLING CASE.** Client understands and authorizes Thompson Law LLP (TL) and All Access Advocates LLC (AL) (collectively, the Firms) to assign, as determined by the Firms, an attorney and or staff to handle this matter for Client without further consultation with Client. The Firms do not promise or represent any particular person will handle the matter for Client. The Firms retain the right to assign or reassign any attorney or staff member to the matter, or away from the matter, in the Firms' sole discretion. The Firms will assign a primary contact person or email with respect to all notices required by this Agreement and the representation and Client will be deemed to have provided notice to both Firms if duly provided to such primary contact person or email. Likewise, notice by either of the Firms to Client shall constitute notice for the Firms, unless otherwise noted. The Firms will maintain joint responsibility, including joint financial responsibility, for the handling of Client's claims, and AL will have primary responsibility for Client communication and obtaining information and documents needed to prepare Client's claims for potential settlement, while TL will primarily handle claim negotiations, settlement, and litigation, if required.

---

[3] https://www.google.com/search?q=866-980-1394&oq=866-980-1394&gs_lcrp=EgZjaHJvbWUqBggAEEUYOzIGCAAQRRg7MgYIARAGGEDSAQgzNTY4ajBqNKgCALACAA&sourceid=chrome&source=chrome.ob&ie=UTF-8, Google search results for phone number 866-980-1394

*INSERT #3:*







37. Plaintiff kept receiving text messages and phone calls from "Car Accident Helpline." Plaintiff issued three (3) Do-Not-Call requests over the phone and Car Accident Helpline texted or called three (3) times outside of Federal time frame for solicitation calls (47 CFR § 64.1200(c)(1)). See Table A below.

| **Number** | **Date** | **Time** | **Caller ID** | **Note** |
|---|---|---|---|---|
| 1. | 05/30/2026 | 7:14 AM | 945-402-0031 | Received a text message before 8 AM |
| 2. | 05/30/2026 | 6:24 PM | 915-296-7908 | DNC- Laura from Car Accident Helpline (call) |
| 3. | 05/31/2026 | 7:19 AM | 888-974-2224 | Received a text message before 8 AM |
| 4. | 05/31/2026 | 9:30 AM | 888-974-2224 | Received a text message before 12 PM on Sunday |
| 5. | 06/01/2026 | 6:15 AM | 956-446-2312 | DNC- Oshea from Car Accident Helpline (call) |
| 6. | 06/02/2026 | 12:58 PM | 956-446-2312 | DNC- Oshea from Car Accident Helpline (call) |

38. Plaintiff, annoyed and frustrated by these violating calls and text messages, did further research on Car Accident Helpline website (INSERT #4) and the number (888-974-2224) and website the text messages and contract came from to further identify who kept violating the TCPA and TBCC.

*INSERT #4:*




39. On June 17, 2026, Plaintiff emailed Car Accident Helpline and informed them of the issue. The email came back as "address not found."

40. So, Plaintiff researched the phone number further. Plaintiff discovered that the number is connected to another TCPA case where Defendant Quintessa is listed as the user of this phone number (INSERT #5). In addition, Plaintiff searched the inauthentic and non-informative website used to send the contract (www.accidentintakeform.com) listed a phone number 855-586-3446 (INSERT #6). When you google search the 855- phone number, a link to https://www.pr.com/press-release/840970 is listed in the results. When you click the link, a

press release statement opens and contains the contact for an employee of Quintessa's, Alex Bryan with the same 855- phone number listed (INSERT #7).

*INSERT #5:*




[4]

*INSERT #6:*




[5]

---

[4] https://www.google.com/search?q=888-974-2224&oq=888-974-2224&gs_lcrp=EgZjaHJvbWUqBggAEEUYOzIGCAAQRRg7MgYIARAGGEAyBggCEAYYQDIGCAMQRRg70gEIMzY1N2owajeoAgiwAgHxBfod5H0bqL7i8QX6HeR9G6i-4g&sourceid=chrome&source=chrome.ob&ie=UTF-8, Google search results for 888-974-2224

[5] https://accidentintakeforms.com/

***INSERT #7:***

**Contact**

Quintessa Marketing
Alex Bryan
855-586-3446
quintessamarketing.com
✉ Contact

**Online Version of Press Release**

https://www.pr.com/press-release/840970

[6]

41. On July 22, 2026, Plaintiff emailed Quintessa and informed Quintessa about the violations.

42. On August 7, 2026, Defendant Quintessa responded to Plaintiff's complaint email and alleged that Plaintiff submitted a contact request form on legalconsultation.net and received the call from "Max" with one of Legal Consultation's marketing partners.

43. Plaintiff never made an inquired via phone call or online to Defendants prior to the phone call. Plaintiff did not speak to anyone named "Max" during the call.

44. Quintessa pays and hires third parties like legalconsultation to make inquires like this to avoid liability.

45. Plaintiff provided all evidence during the discussion. Quintessa did not provide or produce the alleged opt-in.

[6] https://www.pr.com/press-release/840970

46. Defendant Thompson Law and All Access Advocates hired telemarketers like Defendants Quintessa to find prospective clients. Then Defendant Quintessa hires and pays third parties, like Legalconsultation.net, to gather information for intake purposes, and send consumers, like Plaintiff, to Quintessa to make it look like an inbound call or legitimate inquiry.

47. These are false, misleading, and deceptive practices.

48. Nonetheless, Defendants have a type of business arrangement and gain economically on these misleading practices. The factual record demonstrates that Plaintiff's allegation is well-founded because Defendant Quintessa solicits on behalf of Thompson Law and All Access Advocates, someone had to hire Quintessa to make these type of solicitation calls, Quintessa had to know the requirements the firms need for intake, Quintessa would not make calls on behalf of Thompson Law and All Access Advocates if they did not have a business agreement, and Quintessa has access and possession of Thompson Law and All Access Advocates agreement.

49. Each business relationship between Defendants have will later be revealed in discovery.

50. Plaintiff searched for Defendant Thompson Law, All Access Advocates, and Quintessa's Texas telephone solicitation registration certificate on https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and discovered all Defendants has no existing registration certificate.

51. Defendants' phone calls and texts caused Plaintiff aggravation, stress, and caused Plaintiff cell phone battery to run down.

52. No emergency was necessitated with the calls.

## ATTORNEY CAR ACCIDENT REPRESENTATION SOLICITATION INDUSTRY

53. Attorneys are widely prohibited from cold call solicitating consumers and prospective customers who have no preexisting relationship.

54. It is becoming increasingly commonplace for attorneys to hire third-party marketing firms to make the cold calls on behalf of attorneys and law firms.

55. Attorneys and law firms enter into contracts that explicitly authorize third parties to solicit their legal representation services.

56. Attorneys and law firms supply the third-party telemarketers with their retainer and/or representation agreements as part of the process of engaging and authorizing the telemarketers to solicit their legal services.

57. Attorneys and law firms create what is in essence an escrow account to which the telemarketer has access. The attorneys and law firms deposit a standard $50,000 into the account. The telemarketer then draws a referral fee out of the account upon each successful referral to the attorney or law firm.

58. The attorney and law firms that are increasingly hiring telemarketers are distinctly aware their telemarketers with whom they enter into solicitation contracts, open escrow accounts, and deposit money with, will be performing solicitation services on their behalf.

## NO INNOCENT EXPLANATION FOR THE EVIDENTIARY CHAIN

59. Defendants are knowingly and willfully violating the TCPA, TBCC, and TGC.

60. The factual allegations described above establish a continuous chain connecting the original call to the Defendants' marketing operation:

a. Plaintiff's phone number was placed into the Defendants' lead/intake system and called;

b. Plaintiff never submitted the alleged intake form or otherwise consent to the call;

c. The number appeared within the Defendants' CRM or marketing system;

d. The messages were generated and transmitted as part of standardized lead-follow-up process;

e. The call concerned the solicitation of legal service;

f. The entities involved in the transmission had an established business relationship concerning the generation, distribution, and follow-up of the legal leads;

g. Defendants cannot and will not identify a valid or authentic consent record authorizing the call.

61. Defendants' conduct was not the result of an isolated or inadvertent occurrence. Rather, the circumstance demonstrates that Defendants knew, or at minimum should have known, of the practices, giving rise to Plaintiff's claims and permitted those practices to continue.

62. Defendants' repeated conduct, the systems, and procedures through which the conduct was carried out, and Defendants' ability to monitor and prevent such conduct support an inference of actual knowledge, constructive knowledge, and/or conscious disregard of the consequences of its actions.

63. Plaintiff alleges that Defendants' failure to investigate, monitor, or take reasonable corrective measures despite circumstances putting Defendant on notice constitutes, as applicable, deliberate indifference, reckless disregard, and/or willful blindness.

64. Accordingly, Defendants cannot reasonably avoid responsibility merely by asserting that it did not know how the communications were initiated or that it relied upon a third party. At minimum, these circumstances warrant discovery into Defendants' knowledge, compliance procedures, lead-acquisition practices, communications with third-part marketers, and efforts, or lack thereof, to verify consent and prevent unlawful communications.

65. Therefore, there is no innocent explanation for the call at issue based on the evidentiary chain.

**VICARIOUS LIABILITY OF DEFENDANTS THOMPSON LAW AND ALL ACCESS ADVOCATES FOR DEFENDANT QUINTESSA**

66. Thompson Law and All Access Advocates are "vicariously liable" because under federal common law principles of agency for TCPA violations committed by third-party telemarketers. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

67. Thompson Law and All Access Advocates markets legal representation through direct telephone solicitation by its hired telemarketer Quintessa, who acts on its behalf. Quintessa transfers hot leads to Thompson Law and All Access Advocates, Thompson Law and All Access Advocates accepts the leads and follows-up once they accept the lead. Quintessa was Thompson Law and All Access Advocates's agent when it made prohibited calls on behalf of, and with the actual authority for Thompson Law and All Access Advocates.

68. Thompson Law and All Access Advocates directs, controls, authorizes, and pays Quintessa to generate leads for Thompson Law and All Access Advocates's legal services through telephone solicitation. Moreover, it requires, authorizes, of at least permits Quintessa to solicit explicitly for personal injury representation.

69. Thompson Law and All Access Advocates maintain interim control over the actions of Quintessa by determining when and under what circumstances it will accept the referral.

70. Thompson Law and All Access Advocates directed the calls be placed into Texas and provided Quintessa with instructions on how to qualify potential consumers. Thompson Law and All Access Advocates required Quintessa to follow the instructions they provided for lead referral(s) in order for Thompson Law and All Access Advocates to accept and serve those prospective clients.

71. Thompson Law and All Access Advocates sets the criteria for qualifying leads, which Quintessa must follow, and Quintessa leads qualified on those criteria exclusively to Thompson Law and All Access Advocates. Plaintiff is unaware of the qualifying thresholds, but the salient question is whether the potential client have been in a car accident, whether the client was at fault, in what state the accident occurred, whether the client suffered any personal injuries, and whether the client has previously obtained legal representation.

72. Thompson Law and All Access Advocates had absolute control over whether, and under what circumstances, they would accept a customer from Quintessa.

73. On information and belief, Thompson Law and All Access Advocates writes or at least approves the call script and/or methods Quintessa uses when qualifying leads for Thompson Law and All Access Advocates

74. Thompson Law and All Access Advocates instructed the Quintessa on what states and area codes to target. Thompson Law and All Access Advocates instructed Quintessa to call states and area codes in which Thompson Law and All Access Advocates is licensed to practice law.

75. Quintessa is Thompson Law and All Access Advocates's associate and does nothing to disturb the impression Quintessa work for and speak and act on behalf of Thompson Law and All Access Advocates.

76. From Quintessa's initial call through Defendants Thompson Law and All Access Advocates acceptance of a completed representation application, the telemarketing of Thompson Law and All Access Advocates's legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Thompson Law and All Access Advocates, the principal, with Quintessa acting as Thompson Law and All Access Advocates's agent.

77. Quintessa, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Thompson Law and All Access Advocates's criteria.

**DEFENDANTS' CONDUCT CONSTIUTES BARRATRY UNDER TEX. GOV'T. CODE 82.0651 AND PENAL CODE:**

**Texas Government Code Chapter 82**

78. Sec. 82.0651. Civil Liability for Prohibited Barratry. (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, and to recover any amount that may be awarded under Subsection (b). A client who enters into a contract described by this subsection may bring an action to recover any amount that may be awarded under Subsection (b) even if the contract is voided voluntarily.

79. (b) A client who prevails in an action under Subsection (a) shall recover from any person who committed barratry: (1) all fees and expenses paid to that person under the contract; (2) the balance of any fees and expenses paid to any other person under the contract, after deducting fees and expenses awarded based on a quantum meruit theory as provided by Section 82.065(c); (3) actual damages caused by the prohibited conduct; (4) a penalty in the amount of $10,000; and (5) reasonable and necessary attorney's fees.

80. (c) A person who was solicited by conduct violating Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

81. (d) A person who prevails in an action under Subsection (c) shall recover from each person who engaged in barratry: (1) a penalty in the amount of $50,000; (2) actual damages caused by prohibited conduct; and (3) reasonable and necessary attorney's fees.

82. Plaintiff received an incoming call that led to solicitation for Defendants' services.

83. Plaintiff received a retainer from Defendants but did not sign, return, or enter into a formal agreement with Defendants.

84. Defendants solicited by telephone, and therefore, are in violation of Section 38.12, Penal Code, and Rule 7.03.

85. Defendant Thompson Law paid Quintessa to make the unauthorized solicitation call to Plaintiff for financial gain.

86. Defendant All Access Advocates paid Quintessa to make the unauthorized solicitation call to Plaintiff for financial gain.

87. Defendant Quintessa made unauthorized solicitations to Plaintiff on behalf of Thompson Law and All Access Advocates for financial gain.

**Penal Code Chapter 38**

88. Sec. 38.12. Barratry and Solicitation of Professional Employment. (a) A person commits an offense if, with intent to obtain an economic benefit the person: (1) knowingly institutes a suit or claim that the person has not been authorized to pursue; (2) solicits employment, in person, by telephone, through a direct message on a social media platform, or by another electronic communication, including through a false, misleading, or deceptive electronic communication, for the person or for another.

89. (b) A person commits an offense if the person: (1) knowingly finances the commission of an offense under Subsection (a); (2) invests funds the person knows or believes are intended to further the commission of an offense under Subsection (a); or (3) is a professional who knowingly accepts employment within the scope of the person's license,

registration, or certification that results from the solicitation of employment in violation of Subsection (a).

90. (d) A person commits an offense if the person: (1) is an attorney, chiropractor, physician, surgeon, or private investigator licensed to practice in this state or any person licensed, certified, or registered by a health care regulatory agency of this state; and (2) with the intent to obtain professional employment for the person or for another, provides or knowingly permits to be provided to an individual who has not sought the person's employment, legal representation, advice, or care, a written communication or a solicitation, including a solicitation in person, by telephone, through a direct message on a social media platform, or by another electronic communication that: (B) concerns a specific matter and relates to legal representation and the person knows or reasonably should know that the person to whom the communication or solicitation is directed is represented by a lawyer in the matter; (D) is provided or permitted to be provided by a person who knows or reasonably should know that the injured person or relative of the injured person has indicated a desire not to be contacted by or receive communications or solicitations concerning employment; (E) involves coercion, duress, fraud, overreaching, harassment, intimidation, or undue influence; or (F) contains a false, fraudulent, misleading, deceptive, or unfair statement or claim.

91. Barratry is a serious crime for all purposes and acts, specifically including the State Bar Rules and the Texas Rules of Disciplinary Procedure.

92. Sec. 38.01. Definitions. In this chapter: (11) "Solicit employment" means to communicate in person or by telephone with a prospective client or a member of the prospective client's family concerning professional employment within the scope of a

professional's license, registration, or certification arising out of a particular occurrence or event, or series of occurrences or events, or concerning an existing problem of the prospective client within the scope of the professional's license, registration, or certification, for the purpose of providing professional services to the prospective client, when neither the person receiving the communication nor anyone acting on that person's behalf has requested the communication.

93. (12) "Professional" means an attorney, chiropractor, physician, surgeon, private investigator, or any other person licensed, certified, or registered by a state agency that regulates a health care profession.

**INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES IN RESULT OF THE CALLS**

94. Defendants' call harmed Plaintiff by causing the very harm that Congress sought to prevent---a "nuisance and invasion of privacy." Defendants trespassed upon Plaintiff's cellular telephone and rights. The anonymous nature of the phone call caused intrusion upon Plaintiff's phone, Plaintiff's phone to require additional charging, Plaintiff's confusion, Plaintiff's emotional distress, and Plaintiff to incur higher telephone and electric bills.

95. Plaintiff has suffered emotional and statutory damage from Defendants' calls and texts.

**CAUSES OF ACTION**

**COUNT ONE**
**Violations of 47 U.S.C. 227(b)(1)(A)- Non-Emergency Pre-recorded Messages to Cellular Telephones**
**(Against Defendant Quintessa)**

96. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-95.

97. The foregoing acts and omissions of Defendant Quintessa and/or their affiliates or agent constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing pre-recorded messages to Plaintiff's cellular telephone numbers without her prior express written consent.

98. Plaintiff was statutorily damaged at least one (1) time under 47 U.S.C § 227(b)(3)(B) by Defendants by the phone call described above, in the amount of $500.00 per call.

99. Plaintiff was further statutorily damaged because Defendant Quintessa willfully or knowingly violated this subsection of the TCPA, Plaintiff requests that the court treble the damages amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

100. Pursuant to 47 U.S.C § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency phone calls to cellular telephone numbers without the prior express written consent of the called party.

**COUNT TWO**

**Violations of Texas Business and Commerce Code 305.053- Pursuant to 47 U.S.C § 227(b)**
**(Against Defendant Quintessa)**

101. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-100.

102. Defendant Quintessa placed a pre-recorded message to Plaintiff's cellular phone in violation of 47 U.S.C. § 227(b)(1)(A).

103. A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for damages in the amount provided by this section. Tex. Bus. & Com. Code § 305.053(a)(2).

104. A plaintiff who prevails in an action for damages under this section is entitled to the greater of $500 for each violation or the plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(b)(1-2).

105. If the court finds that the Defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damage under Subsection (b) to not more than the greater of $1,500 for each violation or three times the Plaintiff's actual damages. Tex. Bus. & Com. Code § 305.053(c)(1-2).

106. The fact that a claimant has recovered under a private action arising from a violation of this chapter more than once may not limit recovery in a future legal proceeding in any manner. Tex. Bus. & Com. Code § 305.055.

**COUNT THREE**
**Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C)(2)**
**(Against Defendant Quintessa)**

107. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-106.

108. The foregoing acts and omissions of Defendant Quintessa and their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations

to a consumer who is on the National DNC registry or who had requested to no longer be contacted in violation of 47 C.F.R. § 64.1200(c)(2).

109. Plaintiff is entitled to an award of at least $500 in damages for each such violations 47 U.S.C. § 227(c)(5)(B).

110. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT FOUR**
**Violation of the TCPA "Quiet Hours" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C)(1)**
**(Against Defendant Quintessa)**

111. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-110.

112. The foregoing acts and omissions of Defendant Quintessa and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location).

113. Plaintiff is entitled to an award of at least $500 in damages for each such violations 47 U.S.C. § 227(c)(5)(B).

114. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**COUNT FIVE**
**Violations of Texas Business and Commerce Code 302.101- Failure to obtain a Telephone Solicitation Registration Certificate**
**(Against Defendants Thompson Law and All Access Advocates)**

115. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-114.

116. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non- registered solicitation texts to Plaintiff's cellular telephone number without her prior express written consent.

117. Plaintiff searched for Defendants' Texas telephone solicitation registration certificate on https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp and discovered Defendant has no existing registration certificate.

118. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

**COUNT SIX**
**Violations of Texas Business Commerce Code 302.252(a)**
**(Knowingly Making Telephone Solicitations for a Non-Registered Seller)**
**(Against Defendant Quintessa)**

119. Plaintiff realleges and incorporates by reference every allegation set forth in paragraphs 1-118.

120. The foregoing acts and omissions of Defendant Quintessa and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.252(a), by knowingly making non-registered solicitation calls to Plaintiff's cellular telephone number on behalf of a seller that was not registered to telephone solicit in Texas.

121. A person commits an offense if the person knowingly acts as a salesperson on behalf of a seller who violates the registration requirements of this chapter. Tex. Bus. & Com. Code § 302.252(a).

122. Defendant Quintessa knew or should have known that Defendant Thompson Law and All Access Advocates was not registered to telephone solicit in Texas.

123. Plaintiff is entitled to an award of up to $5,000 in damages for each of one (1) such violation. Texas Business and Commerce Code 302.302(a).

124. Plaintiff is entitled to an award of all reasonable costs of prosecuting the action, including court costs, investigation costs, deposition expenses, witness fees, and attorney's fees. Texas Business and Commerce Code 302.302(d).

**COUNT SEVEN**
**Violation of 82.0651 Civil Liability for Prohibited Barratry**
**(Against all Defendants)**

125. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-124.

126. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Government Code 82.0651, by making telephone solicitation to Plaintiff's cellular telephone number without her prior express or written consent.

127. Defendants sent a phone call to Plaintiff's phone number, solicited Plaintiff for legal services for personal injury, and issued a retainer for employment.

128. Defendants are barred by an ethics code, which they violated because they were telephone soliciting.

129. Defendant Thompson Law paid Quintessa to make the unauthorized solicitation call to Plaintiff for financial gain.

130. Defendant All Access Advocates paid Quintessa to make the unauthorized solicitation call to Plaintiff for financial gain.

131. Defendant Quintessa made unauthorized solicitations to Plaintiff on behalf of Thompson Law and All Access Advocates for financial gain.

132. Defendants' actions are for the purpose of targeting victims who have been in an auto accident for financial gain.

133. A person who was solicited by conduct violation Section 38.12(a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry. TGC 82.0651(c).

134. A person who prevails in an action under Subsection (c) shall recover from each person who engaged in barratry: (1) a penalty in the amount of $50,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees. TGC 82.0651(d)(1-3).

135. This section shall be liberally construed and applied to promote its underlying purposes, which are to protect those in need of legal services against unethical, unlawful solicitation and to provide efficient and economical procedures to secure that protection. TGC 82.065(e).

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants jointly or severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants from engaging in the unlawful conduct set forth herein;

D. An award of $1,500 per call in statutory damages arising from the TCPA 47 U.S.C. 227(b) intentional violations for one (1) phone call against Defendant Quintessa;

E. An award of $1,500 per text in statutory damages arising from intentional violations of the TBCC 305.053 pursuant to 227(b) for one (1) phone call Defendant Quintessa;

F. An award of $1,500 per call in statutory damages arising from the TCPA 47 U.S.C. 227(c), 47 C.F.R. 64,1200(c)(2) intentional violations for four (4) phone call and text messages against Defendant Quintessa;

G. An award of $1,500 per call in statutory damages arising from the TCPA 47 U.S.C. 227(c), 47 C.F.R. 64,1200(c)(1) intentional violations for three (3) phone calls against Defendant Quintessa;

H. An award of $5,000 in statutory damages arising from each violation of TBCC 302.252 for one (1) phone call against Defendant Quintessa;

I. An award of $5,000 in statutory damages arising from each violation of TBCC 302.101 for one (1) phone call against Defendants Thompson Law and All Access Advocates;

J. An award of $50,000 in statutory damages arising from violations of the TGC 82.0651 for one (1) phone call against Defendant Thompson Law;

K. An award of $50,000 in statutory damages arising from violations of the TGC 82.0651 for one (1) phone call against Defendant All Access Advocates;

L. An award of $50,000 in statutory damages arising from violations of the TGC 82.0651 for one (1) phone call against Defendant Quintessa;

M. An award to Plaintiff of damages, as allowed by law under the Telephone Consumer Protection Act;

N. An award to Plaintiff of damages, as allowed by law under the Texas Business and Commerce Code;

O. An award to Plaintiff of damages, as allowed by law under the Texas Government Code;

P. Such further relief as the Court deems necessary, just, and proper

Dated: 09/17/2026

Submitted by:

Emily Sutton
Plaintiff, Pro Se
1352 Jesus Chavez Pl.
El Paso, TX 79928
915-474-9638
e.sutton1718@gmail.com